WILLAM B. HOOKER, APPELLANT, vs. WILLIAM H. JOHNSON, APPELLEE.

1. Where a witness has a joint interest with the party for whom he is called to testify, either in the subject matter to be recovered or in the contract as a general partner, joint or part owner, or joint contractor, by which he has an interest in the very thing claimed or in the money to be received, he is incompetent.

2. Although a witness has answered that he is not interested in the result of the suit pending, this does not prevent a further examination into his real situation and the facts of the case as to his interest.

3. The statute of 1854, as to the admission of shop books and other accounts in evidence construed. Held, to adopt the liberal principle of the American courts with their restrictions, that it is not confined to merchants; that the entries to be admitted must be originally made or contemporaneous with the transaction; that the book must appear to be fairly kept, and free from erasures and interlineations, and the party make affidavit that the articles were delivered and the labor and services actually performed; that the entries were made at or about the time of the transactions and are the original entries, and that the charges have not been paid.

4. As a general rule, evidence must be given to the jury before the case is submitted and the judge gives his charge, yet there are exceptions, and the omission to read the obligation declared on, which is admitted by the pleadings, is one of these.

5. The instructions of the court to the jury should be confined to the issue made by the pleadings, even although this be immaterial.

Appeal from Hillsborough Circuit Court.

Johnson, the appellee, instituted an action of covenant

against the appellant in the court below, on an agreement in writing between the parties, dated 18th January, 1853, which agreement is fully set forth in the opinion of the court. The declaration alleges that Hooker, the defendant, did not perform his covenants in the several respects set forth in the agreement, and that he did not furnish seed, corn, &c., as he therein agreed. The defendant filed five pleas—to the two first of which there was a demurrer, and, the demurrer being sustained, the said two first pleas were stricken out. The remaining three pleas allege, first, that the plaintiff hath not well and truly performed his part of the said contract; second, that whatever part of said contract was left unperformed by defendant was so left by reason of the nonperformance, by plaintiff, of his part of said contract; third, that the plaintiff was indebted to defendant in a large sum of money on various accounts, which he prays may be set off, &c.

At the trial, the plaintiff offered two witnesses, who were first sworn on their *voir dire*. One of them, Jesse Gibson, being questioned as to his interest, answered that " he was not interested in the result of the present suit." He was then asked, if " he and plaintiff had not agreed to plant the premises in the declaration mentioned in partnership before or at or after the said contract between plaintiff and defendant," but plaintiff by his counsel objected, and the court, sustaining the objection, refused to allow the witness to answer. Plaintiff's counsel then advised the court and defendant's counsel that they withdrew their objection to the above interrogatory; but defendant's counsel replied that they would impeach the testimony by other witnesses. With this view, Seth Howard was asked by defendant what he knew in relation to the partnership of Jesse Gibson with plaintiff in planting, &c.; but the counsel for plaintiff objected and the court sus-

tained the objection.   To which ruling of the court defendant by his counsel excepted.

Defendant by his counsel then proposed to introduce the book of defendant in which the original entries were made of the supplies the plaintiff had received from defendant, without having first introduced evidence to show that said book was a merchant's book, or to show its character; but plaintiff's counsel objected, and the court ruled that the book could not be introduced as evidence.   To which ruling defendant by his counsel excepted.

After the case was submitted, and the court was about to charge the jury, the plaintiff's counsel asked leave to read the agreement or obligation in which the suit was founded to the jury, which leave being allowed, defendant by his counsel excepted.

Defendant by his counsel then moved the court to instruct the jury, that if they believed from the testimony that the plaintiff did not perform his part of the contract, then they should find for the defendant.   The court gave this instruction, with the qualification that if the jury find that such non-performance on the part of the plaintiff was occasioned by the act of the defendant, then the defendant would be liable.   To which qualification defendant by his counsel excepted.

*James Gettis* and *James T. Magbee*, for Appellant.

*J. K. Glover, J. B. Lancaster* and *M. Whit Smith*, for Appellee.

BALTZELL, C. J., delivered the opinion of the court.

This is an action of covenant on an obligation dated the 18th of January, 1853, between William B. Hooker, of the one part, and William H. Johnson of the other.   William B. Hooker of the first part agrees and binds himself to fur-

nish three hands, negroes, to-wit : Nancy, Dick and Josh, two horses to plough and plenty of horse feed for the same, all to be furnished on the premises now occupied by said Hooker about four miles North of Fort Hamer in Hillsborough County, and the said Hooker further obligated himself to furnish sea island cotton seed, to plant say thirty three acres of said premises, and all other seeds necessary for planting, say corn, potatoes, cane, rice, &c., the balance of said premises, say 20 acres; also to furnish a sufficiency of teams to do all necessary hauling about the same. He also agrees and binds himself to furnish a sugar mill to grind the cane that may be made free of toll, also a cotton gin on the premises to pick the crop of cotton that may be made free of toll, and all necessary farming tools to cultivate the before mentioned premises. He further binds himself to furnish said Johnson and all others that may be with him, say his family, sons in law and families with provisions at the customary prices of the country for their use and consumption during the cultivation and gathering of the before mentioned crops. He also agrees to give said Johnson and others aforesaid, access to his cowpens to milk as much as they may want, &c., to furnish the present buildings for the use of the said families, also to build two other houses or rooms during the next spring for their use and occupation during the making and gathering the crop. For and in consideration of the before mentioned farm hands, horses, feed, &c., the said Hooker is entitled to have one equal half part of all the before mentioned crop.

And said Johnson obligates himself to cultivate to the best of his skill and ability the farm and premises, and gather and house the same as early as practicable, with three hands in conjunction with said negroes furnished by Hooker, said negroes to be furnished by Johnson. For and in consideration of said hands, &c., Johnson is entitled

27

to have and receive, one equal-half part of the above mentioned crop, that is to say the crop of 1853.

It is alleged that the defendant did not perform his covenant in the several respects above stated by not furnishing seed corn, &c. There are five pleas to which a demurrer was filed, but this it is agreed applied only to the first and second, which were stricken out by order of the Court, so that there remain but three, on which issue was joined which the jury was sworn to try.

These allege, 1st. That plaintiff hath not well and truly performed his part of the said contract. 2d. That whatever part of said contract was left unperformed by defendant was so left by reason of the non-performance by plaintiff of his part of said contract, and 3dly. That the plaintiff was indebted to defendant in a large sum of money on various accounts which he prays may be set off, &c. During the trial plaintiff offered two witnesses, who being sworn on their *voir dire*, one of them, Jesse Gibson, was questioned as to his interest, and answered, that "he was not interested in the result of the pending suit;" he was then asked if "he and the plaintiff had not agreed to plant the premises in the declaration mentioned in partnership before, at or after the said contract," but plaintiff objected and the court sustained the objection and refused to allow the witness to answer. Plaintiff's counsel informed the court and defendant's counsel that they withdrew their objections to the above interrogatories, but defendant by his counsel replied that they would impeach the testimony by other witnesses. With this view, Seth Howard was asked by defendant what he knew in relation to the partnership of Jesse Gibson with plaintiff, in planting, &c., but the counsel for plaintiff objected, and the court sustained the objection.

This ruling of the court being excepted to, forms the

Hooker vs. Johnson—Opinion of Court.

first question for our consideration. The rule for the rejection of a witness so situated is, that " where actual gain or loss would result simply and immediately from the verdict and judgment, he is incompetent, as where the proffered witness is a party, though but a nominal party to the suit, or is a party in beneficial interest, or where the immediate effect of the verdict will be to increase or diminish a fund in which he has a joint interest, as where a partner seeks to increase the joint funds or one jointly interested in the subject of the suit is called as a witness for the party, or in short, wherever the direct effect of the executed judgment as. contradistinguished from its efficacy in establishing or evidencing any other right or claim or for any other collateral purpose would be to produce some benefit or make some prejudice to the proposed witness." , 1 Starkie, 108, 9.

In a note to the same note it is said, "a co-partner or party jointly interested in the subject of the suit has usually a direct interest in the particular subject as contra-distinguished from a mere liability to contribution. This seems to be generally true where he is jointly interested with the plaintiff in the subject of the suit, for he would be jointly entitled to the fruit of the proceeding when reduced into possession, whether it were money or goods," &c. Ibid, note 9, p. 108.

The rule is further laid down in these terms, " in general where it is admitted or asserted that the proffered witness has a joint interest with the party who calls him either in the subject matter to be received or in the contract as a general partner, joint or part owner, or joint contractor, by which he has an interest in the very thing claimed or in the money to be recovered, or in the costs incidental to the suit, he is incompetent to give evidence for that party." 1 Starkie, 164.

It was proposed to show that the witness had an interest such as is here stated, and his answer if in the affirmative would have shown that he was a partner, or jointly or beneficially interested in the thing claimed. Viewed in this light we think the question was a proper one, and that the court should have permitted it. Nor do we think that the fact of the witness having answered that he had no interest, was any cause or sufficient reason for preventing further enquiry; the party was entitled to know his position and real situation—the facts of the case so as to test the accuracy of his belief or opinion.

We do not concur in the position of counsel of plaintiff that defendant, by questioning this witness on his *voir dire*, made the witness his own.

Defendant's counsel then proposed to introduce the book of defendant in which the original entries were made of the supplies the plaintiff had received from defendant, without first having introduced evidence to show that said book was a merchant's book, or to show the character of the book; but plaintiff's counsel objecting, the court ruled that the book could not be introduced as evidence, and this ruling was excepted to. In the absence of the book or its contents, without having the charges and entries before us, it is impossible for this court to say whether the court was right or wrong in this ruling. The exceptions should undoubtedly have given the entries and charges desired to be introduced, and if the original book was desirable, an order might be obtained for its inspection by this court. We cannot then say, under this state of the case, that the court erred in the exclusion of the book. Whilst we have come to this conclusion, as the subject may arise again, on the further trial of the case, it is proper that we should give a construction of the statute under which this testi-

mony is sought to be introduced.. It is very brief, and is in the following words:

" Hereafter, in *all suits and actions at law or in equity*, the shop books and books of accounts of *either party* in which the charges and entries *shall have been originally made*, shall be admissible in evidence in favor of *either party : Provided*, that the credibility of such evidence shall be judged of by the jury in cases of trial at law, and by the court in case of a hearing in equity."—Laws 1854, p. 65.

"There are three points to be considered in the construction of all remedial statutes: the old law, the mischief and the remedy; that is, how the common (or old) law stood at the making of the act, what the mischief was for which the common (former) law did not provide, and what remedy the Legislature hath provided to cure this mischief. And it is the business of the judge so to construe the act as to suppress the mischief and advance the remedy."—1 Blks. Com., 87.

The Supreme Court of the State had declared, in the case of Shehee vs. Higgs, decided at January term, 1852, that "a book account is not admitted in this State to be evidence of the sale and delivery of goods." They say: "The facts, though admitted by the demurrer to be true, that the witness was clerk and book-keeper for the plaintiff, and knew of the existence of the account and of its amount from an examination of the books, that the account filed was a correct transcript from the books and that he believed the books to be fairly and honestly kept, are not direct proofs of the assumpsit of the defendant, as charged in the declaration." In this State, they say, "we have not adopted the English rule, which is in perfect consistency with the law of evidence."—4 Florida Rep., 391. The judges differed in opinion, so that a definite rule

could scarcely be regarded as established by the decision. Referring to decisions of other States, we find a great diversity of opinion, some not admitting the books at all, others admitting them with qualifications.

An American author of great ability and distinction takes this view of the subject: "Though this evidence has been sometimes said to be admitted contrary to the rules of the common law, yet, in general, its admission will be found to be in perfect harmony with those rules, the entry being admitted only when it evidently was contemporaneous with the fact and part of the register. Being the act of the party himself, it is received with greater caution; but still it may be seen and inspected by the jury."—1 Greenleaf Ev., 205, § 118.

In a note, the same author says: "The rules of the several States in regard to the admission of this evidence are not uniform, but, in what is about to be stated, it is believed that they concur. Before the books of the party can be admitted in evidence, they are to be submitted to the inspection of the court, and if they do not appear to be a register of the daily business of the party, and to have been honestly and fairly kept, they are excluded. If they appear manifestly erased and altered in a material part, they will not be admitted, unless the alteration is explained. If objectionable in this respect, the party then is required to make oath in open court that they are the books in which the accounts of his ordinary business transactions are usually kept. He must also swear that the articles therein charged were actually delivered and the labor and services actually performed; that the entries were made at or about the time of the transactions and are the original entries thereof, and that the sums charged and claimed have not been paid.—Greenleaf, § 118, p. 215, n. 1.

In this state of uncertainty in our own State as to

whether the rigid and strict rule shall prevail, or the more relaxed one existing in other States, it was appropriate for the Legislature to assert the true law and thereby terminate the difficulties. This they have done by the law under consideration. They declare that the relaxed rule shall prevail that books shall be evidence, not absolutely, but with the qualification that " the entries and charges in it shall have been *originally made*," by which we understand that there must be proof adduced to show, in the first instance, that they were so made. We think, also, that the law does not confine the privilege to merchants, but extends *to either party in all suits and actions*, whether merchants or not.

It is perceived that the law, whilst declaring that books shall be received in evidence, is silent as to the mode of their admission, except so far as it says that the books in which the charges and entries *shall have been originally made* shall be admissible. Under such circumstances, we have no difficulty in saying that the wise and beneficent design of the Legislature would be best effected by holding, as we do, that the relaxed rule in operation in our sister States, with the restrictions and qualifications attached thereto, shall prevail here. This will secure and attain the end and object of the Legislature, and avoid the injury, mischief and frauds sure to attend the adoption of a more latitudinous construction.

After the case was submitted and the court was about giving instructions to the jury, the plaintiff asked leave to read the obligation on which the suit was founded to the jury, which having been allowed, an exception was taken. Undoubtedly the general rule is that all the testimony shall be given to the jury before the argument of the case, yet there are exceptions within the discretion of the court below. See United States Digest, 722, § 1497; 5 Dana, 504; 5 Metcalf, 412; 1 Hill, 300; 4 B. M., 575. And we think

that discretion was wisely exerted on the present occasion. It is indeed difficult to see how the case could have progressed at all without the obligation being before both the court and jury; it was part of the declaration and the substratum of the whole proceeding. As there was no plea denying it, the defendant is understood by the rules of law to have admitted so much of it as was spread upon the record. It was not then a contested point or matter about which defendant could have been surprised or desired to introduce other testimony. Why then nonsuit the party on such account for no other than the vain and idle purpose of having another trial and doing a laborious work over again?

The defendant moved the court to instruct the jury that if they believed from the testimony that the plaintiff did not perform his part of the contract, then they should find for the defendant, which the court gave with a qualification that if the jury find that such non-performance on the part of the plaintiff was occasioned by the act of the defendant, the defendant would be liable.

It is insisted that the court erred in attaching this qualification, and we are inclined to that opinion. By referring to the issues which the jury were sworn to try, we find none alleging that a non-performance of the plaintiff was occasioned by defendant. If there be none, then there was no authority on the part of the court to give to plaintiff the advantage of a position he had not assumed in his pleadings. If the pleadings presented an immaterial issue, the remedy is not by instructions but by pleadings, raising the proper issue. We think then that under the issues before the jury the defendant was entitled to the instruction prayed for. As the case will be reversed for the reasons already stated, permission should be given to amend as well the declaration as the other pleadings so as to present the case fully and fairly upon the merits.