Mr. Justice Westcott
delivered the opinion of the court.
This is an action of assumpsit brought by Franklin Dibble against Calvin L. Robinson to the spring term, 1868, of the Circuit Court for Duval County. The counts in the declaration are foiv goods sold and delivered, for work done and materials furnished, for money lent, for money received by defendant for the use of plaintiff, and for money due upon an account stated. With the declaration is filed a bill of particulars, being a general account embracing charges for cash, for merchandise, &c. On the 3d of July, 1868, the defendant filed his pleas taking issue upon the declaration, and a special plea to the effect that the goods alleged to have been sold and delivered to defendant were received by him as the agent and factor of the plaintiff, under an agreement that defendant should sell the same on commission, the commission to be one-half of the sum he should receive above a price agreed upon. There was also a plea of payment and a plea of set-off, and with this plea of payment and set-off was filed a statement of account showing the items for which the charge was made and the amount claimed.
Plaintiff, F. Dibble, dying, his administrator, C. B. Dibble, was made a party. On the 39th December, A. D. 1874, plaintiff filed an amendment to his declaration. The amendment allege’d that the said Franklin Dibble, in his lifetime, delivered to the defendant goods to the value of $11,483.63, as per bill rendered, that it was agreed between the parties that these .goods should be sold by the defendant, and that defendant would sell and account and pay over to plaintiff the amount of said invoice of goods, and also one-half of the profits for which the said goods should be sold; that the defendant sold, disposed of, or used said goods, and has failed to account for and pay over the value of said goods arising from said sales as lie agreed to do. On the 33d June, 1879, plaintiff filed his replication joining issue upon the pleas. On this day there was verdict for the plaintiff for $1,868.07. A motion for new trial was made, which, being denied, there was final judgment upon the verdict. From this judgment this appeal is taken.
The first three errors assigned may be considered together: they are that the court erred in overruling defendant’s motion for a bill of particulars of plaintiff’s cause of action alleged in his amended declaration; that the court erred in permitting plaintiff to withdraw said bill of particulars, and that the court erred in denying defendant’s motion to dismiss the suit for want of a bill of particulars to plaintiff’s amended declaration. With the original declaration there was filed a bill of particulars, and thus the requirements of the statute and the rule were complied with. There is no rule requiring that for each amendment of the declaration a new bill of particulars shall be filed. As was remarked in the case of Waterman vs. Mattair, 5 Fla., 213, the only object of a bill of particulars is to apprise the defendant of the nature and extent of the cause of action in order that he may plead with the greater certainty. In this case the plaintiff had the right to file an amendment, relying upon his bill of particulars filed with the declaration. If the particulars filed with the «declaration did not embrace and include the matters alleged in the amendment, the defendant’s remedy against surprise was complete. He could have enforced the rule on the trial by which “the parties are not allowed to give any evidence out of them.” Peak, N. P., 172; 1 Esp., Ni. Pri., 195; 2 Bos. and Pul., 243; 2 Sel. Pr., 463.
The fourth error assigned is, that the court erred in admitting in evidence the account books of F. Dibble, deceased, offered by plaintiff. In support of this assignment of error it is contended that these books were not proved to have been books of original entry, and that it was apparent that they were not fairly kept.
The testimony as to. these subjects was substantially as follows: O. B. Dibble, administrator, plaintiff* swears that books of account, 1, 3, 3, and 4, came into his hands as administrator of the estate of F. Dibble, deceased, in due course of administration, as the books of account of F. Dibble, the intestate, used by him in his lifetime in his business as a merchant, in the city of Jacksonville, and as his books of original entry of his transactions" in said business, and tliat he believed the debt was unpaid.
Geo. R. Foster, for plaintiff, testifies that the entries in the books numbered one and two, were in the hand-writing of one Jesse Brush, now deceased, who was in his lifetime and during the months of June, July, and August, 1865, clerk for said Dibble, deceased. Upon cross-examination this witness testified that Dibble was very loose and careless in his manner of doing business, and that Brush, his *122 clerk, was a man oí intemperate habits; that witness came from Lake City to Jacksonville a week or two before Brush left service of Dibble, and did not know, of his own knowledge, 'that Brush was ever intoxicated while he was in the employment of Dibble; that the entries in the books numbered one and two, including all those made in June, July, and August, were made by said Brush, and that upon comparing said books so offered in evidence all the entries in plaintiffs account .were found to be charged in said books except $7.00.
The’ testimony of these witnesses does not establish that the books here offered were books of -original entry.
The statute of this State, Laws of 1854; p. 65, ch. 662, provides that the “books of accounts of' either party, in which the charges and entries shall have been originally made, shall be admissible, in evidence, in favor of'such party.”
There is no evidence as to the hand-writing in which books three and four are. The rule under the statute as well as before it, in cases of this character, requires proof of handwriting. Where the entries, are in the hand-writing of a deceased person,' it is not enough, under any of the cases, for the administrator to swear to the general conclusion that the books came to his hands as administrator as the books of original entry of his intestate, and that he believes the debt was unpaid. The rule as stated by Mr. Greenleaf is: If the party is dead, the books, though 'rendered of much less weight as evidence, may still be offered by the executor or administrator, he making oath that they came to his hands as the genuine and only books of account of the deceased; that to the best of his knowledge and belief the entries are original and cotemporaneous with the fact and the debt unpaid, with proof of the party’s handwriting. 1 Green. Ev., note 1, par. 118; 3 N. H., 232; 6 Cush., 216; 20 Wend., 173.
What a man has actually done and committed to writing, when under obligation to do the act being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of a jury. This is the language of the court in the case of Welsh vs. Barrett, 15 Mass., 380. It is cited, with approbation, in 20 John., 173, and by the U. S. Supreme Court in 8 Wheat., 336.
The statute requires that the books shall be those in which the charges and entries shall have been originally made. This contemplates that the person making the charges shall be identified as one whose duty or employment or custom it was to make them in the ordinary course of business, and in this case proof of hand-writing was essential. The proof as to blotters 1 and 2 may possibly be sufficient. The books purport on their face to be the daily record of business transactions, and the entries are shown to be in the hand-writing of a deceased clerk, but, except from the internal evidence afforded by the entries themselves as made by him, there is no evidence that it was his business to make original entries as to the daily business of the party. We are inclined to think that is sufficient. But, however this may be, it is certainly very easy to establish that a part of the duty of a clerk was to make such entries, and it ought to be done in all cases by positive testimony where it can be. In case of the death of the party making the entry, it is presumed to have been made when it bears date, and that the transaction was of that date.
It was insisted that the books submitted as the books of original entry of the plaintiff’s intestate should not have been submitted to the jury because of erasures and inter-lineations therein, and because of testimony that plaintiff’s intestate was loose and careless in his manner of doing business, and his cleric was intemperate in his habits.
While, there is a difference in the decisions of the courts of other' States-’up'on the point-whether this is a matter for the Judge or the jury, (1 Ark., 355; 3 N. H., 156; 8 Geo., 74,) this court has expressed the opinion that before the books of the party can be admitted in evidence; they are to be subi'nitted to the inspection of the court, and if they do not appear to have been'honestly and fairly kept, they are excluded, and if they appear manifestly erased in a material part, they will not be admitted unless the alternation is explained. 6 Fla., 738:
The books in this case were submitted to the Judge, and after inspection and the proofs of hand-writing, &c., he submitted them to the jury. Sedgwick, Justice, in Coggswell vs. Dolliver, 2 Mass., 222, speaking of an objection of this character says, that to suffer our enquiries to go behind the decision of the Judge in this matter would be throwing things into too loose a state, and we agree with that remark. In addition to this, we would say that.we know of no rule or statute governing the practice of this court which authorizes appeals from decisions of the Judge of this character. So far as the general business reputation and character of the plaintiff’s intestate is concerned, that, even if admissible at all, was a matter affecting the “credibility of such evidence,” and was for the jury. This is also true as to the matter of the intemperate habits of the deceased clerk. 30 Barb., 42.
While several other errors are assigned in this case, we deem it material to examine but one of them.
After defendant’s books had been placed in evidence, and orfe of the witnesses had sworn that some of the entries of charges against plaintiff’s intestate in defendant’s books were in defendant’s handwriting, defendant was offered as a witness to testify as to the regularity and correctness of the entries in said books which were in his hand-writing. The-court held that he was not a competent witness, and based its ruling upon the provisions of the act in relation to testimony in civil actions, approved February 14,' 1874, ch. 1983, Laws.
The rule anterior to this statute, while there is conflict in the cases, some States allowing the suppletory oath and others not, (see 1 Phil, on Ev., note 108, p. 375,) we think is correctly stated in the case of Eastman vs. Moulton, 3 N. H., 157. The court there say: “The party, when called, is in the first instance permitted to state only that the book produced is his book of original entries; that the charges are in his hand-writing; that they were made at the times they purport to have been made, and at or near the time of the delivery of the articles. He may, however, be cross-examined by the other party, in which case his answers become evidence, and he is entitled tov'give a full explanation of any matter, in relation to which an inquiry is made, on the cross-examination. It is reasonable and proper that he should be made a witness as far as the opposite side chooses to make him one; but a cross-examination to testify as to independent facts not necessary to the explanation of the facts respecting which he may have been questioned upon the cross-examination, does not entitle him to go beyond this. It does not make him a witness in chief in the cause.”
The purpose of the statute was to enlarge not to restrict the competency of parties as witnesses. It made parties witnesses in chief in the cause, except as to certain matters therein mentioned. The suppletory oath of the party to the effect mentioned above, we do not think makes him a witness in regard to a transaction between-himself and the deceased person, within the meaning of the statute referred to. Its effect is to prohibit his being a witness in chief in the cause as to such transaction, and to restrict his cross-examination to matters embraced in his suppletory oath. To the extent that the ruling of the court was inconsistent with the view we have expressed, we think it was error.
The judgment is reversed, and a new trial is awarded.