George Lewis, Executor, v. D. B. Meginniss, Jr.—Syllabus.

The judgment of the court is that the supersedeas heretofore granted in this case be, and the same is, hereby vacated.

GEORGE LEWIS, EXECUTOR, ETC., APPELLANT, VS. DANIEL B. MEGINNISS, JR., APPELLEE.

1. In a suit against an executor to recover commissions on sums of money collected by the plaintiff for the executor's testator in his lifetime, after the establishment by proper proof of an agency to collect money for said testator, it is competent for the plaintiff to testify as to the amount of money collected, and also, in the absence of an express agreement fixing the amount of compensation, as to what is a reasonable compensation for collecting the same. This would not be testifying to a transaction or communication with the deceased, and prohibited by the statute.

2. Books of account of either party in which charges and entries have been originally made are admissible in evidence, their credibility to be judged of by the jury; but before such books are admissible in evidence, they are to be submitted to the inspection of the trial judge, accompanied with proof that the entries therein were made by the party contemporaneous with the transactions therein recorded, in due course of business, and if they exhibit a fair register of the daily business of the party, and appear to have been honestly and regularly kept, they should be submitted in evidence to be considered by the jury.

3. In suits against the estates of deceased persons, a plaintiff or party in interest is not prohibited by the provisions of Chapter 1983, Acts of 1874, R. S., section 1095, excluding certain parties

from testifying against the estates of deceased persons, from accompanying the offer of books of original entry in evidence, with a suppletory oath that the books so offered are the books of original entry of the contemporaneous transactions therein set down of the party in whose behalf they are offered.

4. It is well-settled as a principle of law that where one performs services for another at his request, or where services are rendered by one person for another without his expressed request, but with his knowledge and under circumstances which give rise to the presumption of a promise to pay for them, reasonable compensation may be recovered; the liability in such a case is founded upon a presumption of law that the party benefited undertakes to pay reasonable compensation for such services, but this presumption is liable to be rebutted by the circumstances of each case.

Appeal from the Circuit Court for Leon county.

The facts of the case are stated in the opinion of the court.

*R. W. Williams* for Appellant.

*Fred T. Myers* for Appellee.

MABRY, J. :

The appeal in this case is from a judgment at law for three hundred and thirty-two dollars and eighty cents, with interest from the 14th day of May, 1887, to the 25th day of April, 1889, rendered in the Circuit Court for Leon county, against the appellant as executor of the last will and testament of James D. Westcott, deceased, as defendant, and in favor of the appellee as plaintiff.

The first count in the declaration is for money payable by said defendant's testator in his lifetime to said plaintiff, for work done and services performed by him at the request of said testator. The extent of the recovery on the testimony in the record before us must be confined to this count.

The bill of particulars filed with the declaration is a statement of cash received for J. D. Westcott, for rent of houses, and from other sources, commencing December 20th, 1884, and ending May 14th, 1887. The plea was the general issue.

The nature of the action, as disclosed by the testimony, is for services, or commissions, in collecting moneys for rents and from other sources for said deceased in his lifetime. It is clearly shown by the evidence that in August, 1884, said plaintiff was constituted agent for said decedent to collect rents for him then due, or to become due, from his Branchville property, being houses located east of the city of Tallahassee. The authority to act as such agent in collecting said rents in writing, and its execution by the deceased is duly proved by the subscribing witness, J. A. Ball, who also testified that plaintiff acted under said authority, and collected the rents up to the time of the testator's death. This witness does not state what sums for rent were collected by the plaintiff under said authority. The aggregate amount of the sums of money received for the deceased, as contained in the statement filed as a bill of particulars with the

declaration, is $3,228.03, and among these sums are two items, each for $127.40, and a third for $1,550.

J. R. Crump testified for the plafntiff on the trial of this case, that upon an occasion he wished to pay said deceased a sum of money, and visited his room for that purpose, but was refused admittance; that some one told him to pay the money to plaintiff for the deceased, and he did so, taking a receipt for the money. On another occasion witness paid a similar sum to plaintiff for the deceased for the same reason. Two receipts were offered in evidence, one signed by D. B. Meginniss, Jr., *per* B., and acknowledged the receipt of $127.30, subject to order of J. D. Westcott, and the other signed by D. B. Meginniss, Jr., and acknowledged the receipt of $127.40, for interest due on note of J. D. Westcott, to January 1st, 1887. Witness also stated that subsequently the deceased said it was all right as to one of the receipts, but he did not remember as to the other.

J. D. Perkins testified for plaintiff, that said deceased held a mortgage on certain property of J. C. Kemper, who had borrowed a larger sum of money from a third party, and that the money was in the office of witness to pay to Kemper and take up the mortgage held by the deceased; that said deceased was confined to his room, and witness could not see him; but being told by some one that plaintiff could see him, he (witness) went, or sent, across the street to the store of plaintiff, and asked him to get the mortgage; that plaintiff went up to the room of the de-

ceased, and brought down the mortgage receipted, and the money due upon it was handed to plaintiff. The amount of the mortgage was something under $2,000. The room occupied by the testator at the time of this occurrence was up stairs over the office of the witness in the same building. On cross-examination, in reply to a question if he was not induced to ask plaintiff to get the mortgage because of the relations of personal friendship between him and the deceased, the witness answered, yes. He also stated in reply to a question from plaintiff's attorney if he did not get plaintiff to go to the deceased for the mortgage because the former was the agent of the latter, "yes, some one told me plaintiff sometimes attended to his (deceased's) business, and I got him to get the mortgage, and I paid him the money."

The plaintiff testified that he heard the testimony of J. D. Perkins as to the money paid to witness, and it was correct. The amount paid was $1,550, which he deposited in bank to the credit of the deceased. He also testified that "the account filed is correct. The items of the account on file are taken from my book of original entry, in which I charged myself with the rents received from the tenants; the book I now hold in my hand is my book of original entry, and the items correspond." The bill of exceptions recites that "the book spoken of by the witness was handed by attorney for plaintiff to the judge, and the judge handed it back to said attorney, and said attorney handed it to witness who testified as above stated."

B. B. Wilson testified for plaintiff, that he acted as agent for said executor, since the death of his testator, in collecting rents from the said tenants, and other parties who were tenants of the estate, and was paid by said executor ten *per cent.* for collecting said rents.

Exception was taken by the defendant to an adverse ruling admitting the testimony of the plaintiff, a motion for a new trial, embodying, among other grounds, one that the verdict was contrary to the evidence, was overruled, and these rulings are assigned as error here.

It is contended that the testimony of the plaintiff should have been excluded on the ground that it related to a "transaction or communication" had with the deceased, and was inadmissible under the statute.

The authority of the plaintiff to collect rents for the deceased from his Branchville property was clearly shown, and after the establishment of this authority, it was competent for the plaintiff to testify as to the amount of rents collected under it, and no valid objection could be made to his testifying as to what was a reasonable compensation for such services, in the absence of an express agreement fixing the amount of his compensation. This would not be testifying to any transaction or communication with the deceased. Belote vs. O'Brian's Administrator, 20 Fla. 126; Deans vs. King's Executrix, *Ibid*, 533. He would not be permitted, of course, to testify as to any promise

or agreement, or, in other words, to any transaction or communication between him and the deceased, as this would involve a matter between them, the evidence in relation to which is expressly interdicted by the statute. If the statement of the plaintiff, that he heard the testimony of Perkins as to the money paid him (plaintiff), and it was correct, is susceptible of the construction that he went into the room of deceased and obtained the mortgage from him, to this extent, it would include a transaction or communication with the deceased, and would be improper. Harris vs. Bank, 22 Fla., 501. The effect of this, however, becomes immaterial in this case in view of the conclusion we have reached on the testimony. The plaintiff testified that the account filed as a bill of particulars with the declaration was correct, and the items were taken from his book of original entry, in which he charged himself with the rents received from the tenants, and the items in the account and book correspond. The account referred to is a statement of moneys received at various times by the plaintiff for the deceased in his lifetime; and J. A. Ball states that plaintiff collected the rents under the written authority mentioned, up to the death of the deceased. It was competent for plaintiff to testify that the statement of the sums of money received by him for the deceased was correct, and when taken in connection with the testimony of B. B. Wilson, that for collecting rents from the tenants of said estate after the death of the deceased, he was paid ten *per cent.* for such services, will sustain a verdict to the extent of

ten *per cent.* on the amount of rents collected. In one respect this showing, to this extent, is meagre, because it is not stated directly that ten *per cent.* was a reasonable compensation for the services rendered by plaintiff in collecting rents, but as it appears that the executor paid ten *per cent.* for similar services after the death of the deceased, the jury might have concluded that a like compensation was reasonable and just for the plaintiff.

It does not follow from what has just been said, that plaintiff was entitled to recover ten *per cent.* commission on the entire amount of the account filed with the declaration. As to the sum paid to the plaintiff by J. R. Crump, and the sum of $1,550, received from J. D. Perkins on the Kemper mortgage, we think the result is entirely different. The testimony is entirely clear that these sums were not for rents, and there is nothing to show that ten *per cent.* was a reasonable compensation for what the plaintiff did, as shown by evidence, in connection with them. It can not justly be inferred that the circumstances attending the reception of these sums by the plaintiff, were the same as those connected with the collection of rents from the tenants of said estate, and the only evidence that had any bearing on what was a proper compensation, related to the collection of said rents. But independent of this deficiency the plaintiff was not entitled to recover, on the testimony before us, any commissions on the amounts now under consideration. There is nothing to show that plaintiff was the agent of the deceased to collect these amounts, or that the deceased

even requested him to act in the matter ; but, on the contrary, it does appear that other parties requested him to receive the money for the deceased, in one instance, and in the other, to go to his room and get the desired mortgage. The written authority of plaintiff to act for the deceased, as exhibited in the evidence, was confined to collecting rents from the Branchville property, and can not be extended beyond this. The statement of one witness, that he asked plaintiff to see the deceased and get the mortgage, because he was told that plaintiff sometimes attended to deceased's business, can not be taken as proof of agency. The recovery as to the sums in question must rest upon the showing that the plaintiff received money for the deceased from a party who desired him to do so, and also that he went to the room of the deceased at the instance of another party and obtained a mortgage, accepted the money due on it and deposited it to the credit of the deceased, without showing any promise of deceased to pay anything for the same, or that he even requested plaintiff to act in the matter. It is a well-recognized principle of law that where one person performs services for another at his request, or where services are rendered by one person for another without his expressed request, but with his knowledge and under circumstances which give rise to the presumption of a promise to pay for them, reasonable compensation may be recovered. The liability in such cases, in the absence of any special agreement, is founded upon a presumption of law that the party benefited undertakes to pay reasonable compensation for such

services, but this presumption arises from, and is liable to be rebutted by, the circumstances of each particular case. 2 Addison on Contracts, bottom page 532; Davies vs. Davies, 9 Car. & Payne (38 Eng. Com. Law), 87; Moulin vs. Columbet, 22 Cal., 509. The evidence, as to the sums paid by Crump and Perkins, shows that the plaintiff's action in reference to them was prompted by, and for the accommodation of others than the deceased, and there is nothing to overcome the force of the presumption that plaintiff was, in these matters, acting for them.

The view advanced, that plaintiff was entitled to recover the amount of his account sued for, on the showing of his book account of original entry, claimed to have been introduced in evidence, can not be sustained. Originally book accounts were not admissible in evidence in this State. Higgs vs. Shehee, 4 Fla. 382. Subsequently to this decision the Legislature passed an act that shop books of account of either party, in which charges and entries shall have been originally made shall be admissible in evidence in favor of such party, and the credibility of such evidence shall be judged of by the jury in cases at law, and by the court in cases of equity. Chapter 662, acts of 1854, Revised Statutes, sec. 1120. Under this statute, as construed by our decisions, before the books can be admitted in evidence they must be submitted to the inspection of the judge, accompanied with proof that the entries therein were originally made, that is, made by the party contemporaneous with the

transactions therein recorded, in due course of his business, and if they exhibit a fair register of the daily business of the party, and appear to have been honestly and regularly kept, they are admissible as evidence to be judged of by the jury. Hooker vs. Johnson, 6 Fla., 730; Grady vs. Thigpen, *Ibid*, 668; Robinson vs. Dibble's Administrator, 17 Fla., 457; Dunbar vs. Wright's Administrator, 20 Fla., 446. In suits against estates of deceased persons, plaintiffs or parties in interest, are not prohibited by the provisions of Chapter 1983, acts of 1874, Revised Statutes, sec. 1095, excluding certain parties from testifying against the estates of deceased persons, from accompanying the offer of such books in evidence with a suppletory oath that the books so offered are the books of original entry of the contemporaneous transactions therein set down of the party so offering them. Under our decisions this would not be testifying to a transaction or communication with the deceased. Belote vs. O'Brian's Administrator, and Dean vs. King's Executrix, *supra.* The book of original entry referred to by the plaintiff in his testimony in the present case is not before us, but the bill of exceptions recites that the book was handed to the judge, who handed it back to plaintiff's attorney, who handed it to the witness. If we concede in the present case that the book referred to was properly in evidence before the jury, it will not change our conclusion. Whatever force the book account, standing alone, might have have had, it is entirely clear from the evidence introduced by the plaintiff himself that as to the items men-

tioned, its effect is counteracted.    It is shown beyond any doubt that these sums were not for rents, and the circumstances under which plaintiff received them, as we have before seen, do not justify a recovery of commissions on them.    This disposes of the merits of the appeal, and it is not necessary that we enter into any discussion of the other points presented.

The order of the court is, that the judgment of the Circuit Court be reversed and a new trial granted, unless the appellee, or his attorney, within thirty days after the filing of the mandate of this court in the office of the Clerk of the Circuit Court, shall file with the clerk of said court a *remittitur*, as of the date of said judgment, for the amount of commissions at ten *per cent.* on the amounts paid to appellee by J. R. Crump and J. D. Perkins, and interest thereon; and upon the filing of said *remittitur* the judgment shall stand for the balance of said recovery as the judgment of the Circuit Court, to be enforced according to law.    If said *remittitur* shall not be entered as aforesaid the judgment will, upon the expiration of said thirty days be held to be vacated and a new trial awarded.    The costs of this appeal will be taxed against the appellee.