Bradley, J.
 

 The plaintiff, life tenant of a house and lot at the northeast corner of Greenwich and Franklin streets in the city of Hew York, brought this action to recover damages alleged to
 
 *589
 
 have been suffered by her by the maintenance and operation of the New York Elevated Eailroad (of which the Manhattan Eailway Company was the lessee) in Greenwich street in front of her premises, and the erection and maintenance of a station for passengers to go onto and depart from the cars, which station was near to the plaintiff’s house in front on Greenwich street, and on Franklin street into which it extended. The plaintiff gave evidence tending to prove some disturbance of her easements of light, air and access by the railroad and its use. She also gave some evidence of noise produced by it and of the loss of privacy in the use of the third story of the building. It appeared that the rental value of the plaintiff’s premises bad depreciated since the railroad was constructed. And evidence on the part of the defendants waste the effect that in that neighborhood the depreciation of rents was occasioned by the removal of the business stand of the Long Island farmers from there to Gansevoort market, thus diverting the-trade incident to that traffic from the former to the latter place. The court submitted to the jury the question whether the rental value of the plaintiff’s premises had been diminished by deprivation of light, air and access through the maintenance and operation of the road, and directed them to exclude from their consideration the elements of noise, vibration and the loss of privacy for which they could allow no damages. The plaintiff’s exceptions were first to the portion of the charge directing the jury to exclude noise and vibration from consideration, and second to the like instruction'as to the loss of privacy. As there was no evidence of any vibration, the first exception was too broad to raise the question in its application to the noise resulting from the operation of the road.
 
 Haggart
 
 v.
 
 Morgan,
 
 5 N. Y., 422;
 
 Groat
 
 v.
 
 Gile,
 
 51 id., 431.
 

 And the question arises upon the exclusion of the subject of the loss of privacy from the consideration of the jury. It seems well established that the theory upon which an action at law may be supported by an abutting owner against the defendants is that they are in such sense trespassers or wrongdoers as to be liable to such owners for all the injuries resulting proximately from the wrongful act of maintaining and operating their elevated road.
 
 Lahr
 
 v.
 
 Railway Co.,
 
 104 N. Y., 269; 4 St. Rep., 340;
 
 Drucker
 
 v.
 
 Railway Co.,
 
 106 N. Y., 157; 8 St. Rep., 599;
 
 Kane
 
 v.
 
 Railroad Co.,
 
 125 N. Y., 186; 34 St. Rep., 876. In the latter case, and in the more recent one of
 
 American Bank Note Co.
 
 v.
 
 N.Y. El. R. R. Co. & M. Ry. Co.,
 
 129 N. Y., 252; 41 St. Rep., 531, it was held that while such relation of trespasser continued the defendants were liable to the abutting owner for the damages occasioned to him by the noise of operating the road. This liability of the defendants is not that for which the remedy is'by action in the nature of that formerly known as trespass
 
 guare clausum,
 
 but rather in the nature of that known at common law as an action on the case.
 
 Kernochan
 
 v.
 
 N. Y. El. R. R. Co.,
 
 128 N. Y., 559; 41 St. Rep., 110. The continued invasion of the privacy of the occupant of a building very likely would have the effect to reduce the rental value of it for some purposes. The first floor of the plaintiff’s
 
 *590
 
 building was occupied as a grocery or liquor store, and the two above were occupied by persons as places of abode. But so far as appears only two rooms are exposed or subject to the loss of privacy. Those rooms are on the third door, and have one window in front on Greenwich street and two on the Franklin street side. The opportunity by means of the windows t'a look into the room is from the station platform on both streets. The evidence on the subject was mainly given by a person who had occupied those rooms, and was to the effect that the looking in the windows by the passengers and employees was very annoying; that they did it from the station platform, and that they interfered with the privacy of the rooms by looking in when standing on the platform and. when coming down the stairs along the building.
 

 It may be seen that this exposure of the rooms and the occupants within them to the observation of persons at all times of the day would be detrimental to them as dwelling places. While it is true that the observation taken by the patrons and employees
 
 of
 
 the defendants is not the act of the latter, the defendants have furnished the means and opportunity for those persons to invade the privacy of these rooms by looking into them through the windows, and it is by the invitation and procurement of the defendants for the purpose of the business of the road that people are at the station and on its platform. No reason appears why the defendants should not be responsible for the consequences of the loss of privacy thus occasioned, so far as it depreciated the rental value of the rooms in the plaintiff’s building. Those consequences detrimental to the rooms are the rational result of the maintenance of the road and the station, and are reasonably attributable to that cause.
 

 In
 
 Duke of Buccleuch
 
 v.
 
 Metropolitan Board of
 
 Works, L. R., 5 H. L. Cases, 418, the plaintiff under lease from the crown occupied certain premises known as the Marlagn house, the garden of which extended to the Thames, where it was protected -from the river by a wall through which was a door and a causeway leading to the water. The defendants, under the Thames Embankment Act, constructed a roadway in front of the premises, and higher than the garden. It was there held that the loss of the use of the river frontage and the consequent
 
 loss of
 
 privacy, increase of dust and noise occasioned by the erection of the embankment roadway, were subjects to be considered in estimating the damages to be awarded to the plaintiff.
 

 In the present case, although the loss of privacy was properly an element for the consideration of the jury, the question arises whether the plaintiff was prejudiced by the exclusion of it from their attention.
 

 There was no evidence specifically applicable to damages resulting from loss of privacy, but the diminished rental, upon which the plaintiff sought to recover, mainly had relation to the entire building, and was charged to have been produced by the causes which the maintenance and operation of the road furnished. This included the interference with the easements of light, air and access, as well as the consequences of noise and loss of privacy.
 
 *591
 
 But the latter, so far as appears, was applicable only to a couple of rooms on the third floor.
 

 It is difficult to see how the jury could, by any rule of apportionment, have determined upon the evidence the loss of rental for that cause if they had been disposed to have given damages for the loss of privacy. They may, however, have given the plaintiff nominal damages for that cause if it had not been excluded from their consideration. And as the plaintiff may have been prejudiced by the misdirection of the court, the error cannot be disregarded on review.
 
 Herrick
 
 v. Stover, 5 Wend., 580.
 

 These views lead to the conclusion that the judgment should be reversed and a new trial granted, costs to abide event.
 

 All concur.