1359

John P. SNAKENBERG, Appellant v. The HARTFORD CASUALTY INSURANCE COMPANY, INC., Respondent.

(383 S. E. (2d) 2)

Court of Appeals

*Moss, Dore & Kuhn,* Beaufort, *Andrew N. Safran* of *Lourie, Curlee, Barrett & Popowski,* Columbia, and *Richard B. Ness,* of *Early, Kemp & Ness,* Bamberg, *for appellant.*

*Ladson F. Howell* and *Stephen P. Hughes,* of *Howell, Gibson, Boney & Hughes,* Beaufort, *for respondent.*

Heard Jan. 24, 1989.

Decided June 26, 1989.

"You smile and mock me, as if I meant naughtily."[1]

BELL, Judge:

This appeal raises an important question about the scope of the common law action for invasion of privacy. It arises in the form of a declaratory judgment action brought on a contract of insurance. The insured, John P. Snakenberg, seeks a declaration that the insurer, the Hartford Casualty Insurance Company, has a contractual duty to defend him against certain third party suits for invasion of privacy. The Hartford denies that Snakenberg's homeowner's policy covers the liability in question. The circuit court entered judgment for the Hartford. Snakenberg appeals. We affirm.

The facts are undisputed. Snakenberg purchased a Hartford homeowner's insurance policy for his residence in Beaufort, South Carolina. It provided both casualty and personal

---

[1] *Troilus and Cressida,* IV, ii.

liability coverages. By the terms of the personal liability endorsement, the Hartford agreed:

> If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
>
> a. pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> b. provide a defense at our expense by counsel of our choice.

*   *   *   *   *   *

There followed an exclusionary clause stating that personal liability coverage does not apply to bodily injury or property damage "which is expected or intended by the insured." This appeal concerns the application of the exclusionary clause.

While the policy was in force, three teenage girls—all minors suing by a next friend—filed actions against Snakenberg for outrage and invasion of privacy. Their claims stemmed from a swimsuit "modelling session" conducted by Snakenberg on the insured premises. The complaints were substantially the same and alleged the following facts.

Snakenberg placed a want ad in the newspaper, soliciting swimsuit models at twenty-five dollars an hour. Each of the girls responded to the ad by calling the phone number listed. Snakenberg instructed each to come to his home for the modelling session. When the girls arrived, Snakenberg told them the swimsuits were in his bedroom. Using the bedroom as a dressing room, each girl modelled the swimsuits, unaware that Snakenberg had concealed a video tape camera and recorder in the dressing room and was filming and recording her changing from swimsuit to swimsuit. The girls neither authorized nor consented to let Snakenberg videotape them as they changed swimsuits. Snakenberg's actions intruded into the private activities of the girls, causing them mental suffering, shame, and humiliation.

In each instance, Snakenberg's personal attorney forwarded the complaint to the Hartford with a request that it defend the action. The Hartford refused to defend, asserting that the facts underlying the suits fell within the "intentional acts" exclusion of the policy. Because the Hartford would not defend him, Snakenberg retained his own counsel

in each of the suits. The claims were ultimately settled. Thereafter, Snakenberg commenced this action against the Hartford.

## I.

The applicable law can be briefly stated. The allegations of the third party complaint determine the insurer's duty to defend; and if the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend. *South Carolina Medical Malpractice Liability Insurance Joint Underwriting Association v. Ferry*, 291 S. C. 460, 354 S. E. (2d) 378 (1987).

In this case, the policy expressly excludes coverage for damages intended or expected by the insured. Such an exclusion is valid in a voluntary policy of insurance. *See Rhame v. National Grange Mutual Insurance Company*, 238 S. C. 539, 121 S. E. (2d) 94 (1961) (reasonable exclusions valid); *cf., South Carolina Farm Bureau Mutual Insurance Company v. Mumford*, ____ S. C. ____ , 382 S. E. (2d) 11 (Ct. App. 1989) (contrasting exclusions in voluntary and mandatory insurance policies). Therefore, if the complaint against the insured alleges intentional wrongdoing, the insurer has no duty to defend.

Snakenberg acknowledges these principles of law. Indeed, he has already conceded that the Hartford has no duty to defend the girls' claims for outrage. As the gist of outrage is the *intentional* infliction of emotional distress, he admits it falls within the intentional acts exclusion of the policy.

On the other hand, he argues, the same principles do not apply to the causes of action for invasion of privacy. According to Snakenberg, because malice is not an element of the cause of action, invasion of privacy may be a negligent tort in some cases. He then goes on to argue that the complaints do not allege he videotaped the girls for the purpose of invading their privacy. Instead, he suggests, under the pleadings it is possible he simply concealed the videotape camera and recorder as a security measure to insure that the swimsuits, which could be easily stolen, were not removed from the premises. In such an event, he contends, the intrusion on the girls' private activities would be incidental,

unintentional, and, at most, negligent. Consequently, the Hartford would have a duty to defend the suits.

Snakenberg's argument has several defects, but the most fundamental is a misconception about invasion of privacy as a civil delict. Since there is often confusion about the nature of this tort,[2] we take the opportunity to clarify the law.

## II.

A basic purpose of the common law is to preserve the community's security and liberty by enforcing a reciprocal system of rights and duties among its members. The law assumes there can be neither security nor liberty without some restraint on the power of each person to harm the other. The law seeks to prevent harm by protecting the person, property, and obligations[3] of each member in a civil society. The security and liberty of the person have traditionally been regarded as involving so called dignitary interests, while security and liberty of property and obligation generally involve pecuniary interests. The right to privacy is one kind of dignitary interest.

The law recognizes that each person has an interest in keeping certain facets of personal life from exposure to others. This interest in "privacy" is a distinct aspect of human dignity and moral autonomy. It is embraced by the more general rights of personal security and personal liberty we have already alluded to. *See Pavesich v. New England Life Insurance Company,* 122 Ga. 190, 50 S. E. 68 (1905). However, in the classical common law, this privacy interest did not give rise to a separate cause of action for damages. In part, this was because many interests we now regard as rights of "privacy" were already protected by the common law in other ways. For example, if Richard Roe entered John Doe's dwelling, or opened his diary, or beset

---

[2] In an oft quoted dictum, Judge John Biggs, Jr., described the law of privacy interests as "a haystack in a hurricane." *Ettore v. Philco Television Broadcasting Corporation,* 229 F. (2d) 481, 485 (3d Cir. 1956) *cert. denied,* 351 U. S. 926, 76 S. Ct. 783, 100 L. Ed. 1456 (1956).

[3] By "obligations" we mean those duties owed between man and man which arise by agreement, by position of trust, or by operation of law. In law, these are commonly categorized as contracts, fiduciary duties, and torts, although the lines between them are not distinct.

him in public, or put hands on him, Doe could sue Roe for trespass to his land, his things, or his person. Other types of intrusive conduct gave rise to additional actions for nuisance, defamation, and the like. *See, e.g., Moore v. New York Elevated Railroad Company*, 130 N. Y. 523, 29 N. E. 997 (1892) (nuisance); *Tolley v. J. S. Fry & Sons* [1931] A. C. 333 (defamation); *Moore v. Rugg*, 44 Minn. 28, 46 N. W. 141 (1890) (breach of implied contract).

At the beginning of this century, however, American courts began to recognize a separate tort liability for interference with another's privacy, and the right to privacy was born. Following the seminal case of *Pavesich v. New England Life Insurance Company*, 122 Ga. 190, 50 S. E. 68 (1905), the South Carolina Supreme Court first recognized a right of privacy in *Holloman v. Life Insurance Company of Virginia*, 192 S. C. 454, 7 S. E. (2d) 169, 127 A. L. R. 110 (1940). Although the Court has decided several "right to privacy" cases since *Holloman*, the common law of privacy remains largely undeveloped in South Carolina.

### III.

In South Carolina, three separate and distinct causes of action can arise under the rubric of invasion of privacy: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs. *Rycroft v. Gaddy*, 281 S. C. 119, 314 S. E. (2d) 39 (Ct. App. 1984); *Wright v. Sparrow*, _____ S. C. _____, 381 S. E. (2d) 503 (Ct. App. 1989). Although each is said to involve the "right to privacy," there are significant differences among them.

Wrongful appropriation of personality involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit. The gist of the action is the violation of the plaintiff's exclusive right at common law to publicize and profit from his name, likeness, and other aspects of personal identity.

Wrongful publicizing of private affairs involves a public disclosure of private facts about the plaintiff. The gravamen of the tort is publicity as opposed to mere publication. The defendant must intentionally disclose

facts in which there is no legitimate public interest—there is no right of privacy in public matters. Additionally, the disclosure must be such as would be highly offensive and likely to cause serious mental injury to a person of ordinary sensibilities. Finally, where the plaintiff is a public figure, other considerations, including whether the defendant acted with malice, may be relevant to establishing a cause of action.

Wrongful intrusion into private affairs is the third type of invasion of privacy and the only one involved in this case. Its elements differ significantly from the two causes of action outlined above. Since Snakenberg's appeal raises questions about the nature and scope of this tort, we shall examine it in more detail.

### A.

Wrongful intrusion into private affairs, consists of the following elements, which must be pleaded and proved:

(1) *Intrusion.* An intrusion may consist of watching, spying, prying, besetting, overhearing, or other similar conduct. Whether there is an intrusion is to be decided on the facts of each case.

(2) *Into that which is private.* The intrusion on the plaintiff must concern those aspects of himself, his home, his family, his personal relationships, and his communications which one normally expects will be free from exposure to the defendant.

(3) *Substantial and unreasonable* enough to be legally cognizable. "The law does not provide a remedy for every annoyance that occurs in everyday life." *Kelley v. Post Publishing Company*, 327 Mass. 275, 278, 98 N. E. (2d) 286, 287 (1951). In order to constitute an invasion of privacy, the defendant's conduct must be of a nature that would cause mental injury to a person of ordinary feelings and intelligence in the same circumstances. *Meetze v. Associated Press*, 230 S. C. 330, 95 S. E. (2d) 606 (1956). The law protects normal sensibilities, not heightened sensitivity, however genuine. *Id; Rycroft v. Gaddy, supra* (plaintiff must show a blatant and shocking disregard of his rights and serious mental injury or humiliation to himself as a result thereof).

Whether the conduct in question meets this test is, in the first instance, a question of law for the court. *Meetze v. Associated Press, supra.*

*(4) Intentional.* The defendant's act or course of conduct must be intentional. For purposes of civil liability, an act is intentional if (1) it is done willingly; and either (2) the actor desires the result of his conduct, whatever the likelihood of that result happening; or (3) the actor knows or ought to know the result will follow from his conduct, whatever his desire may be as to that result. *Bazley v. Tortorich,* 397 So. (2d) 475 (La. 1981).

In an action for wrongful intrusion into private affairs, the damage consists of the unwanted exposure resulting from the intrusion. Thus, if the plaintiff proves the four elements needed to establish his cause of action, the fact of damage is established as a matter of law. The amount of damage is then to be assessed by the trier of fact. In assessing the damage, the trier of fact may consider the shame, humiliation, and emotional distress suffered by the plaintiff as compensable elements of damage.

### B.

Snakenberg rests his appeal on two propositions: (1) that he did not act with malice and (2) that the purpose of his actions was not to violate the girls' right to privacy. From these propositions he then argues that his intrusion into the girls' private activities was not intentional, but, at most, negligent.

This argument illustrates how intent is often confused with the associated ideas of volition, deliberation, purpose, motive, and malice. Each of these is a discrete concept, however, and it is important to distinguish them in legal analysis.

*Volition* is the actor's willingness to do an act. *Deliberation* is the thinking out or weighing of the act before it is done. *Purpose* is the result desired by the actor. *Motive* is the actor's subjective reason for doing the act. *Malice* is the actor's feeling of ill will or hatred towards the victim of the act.[4]

---

[4] The allegations against Snakenberg provide a simple illustration of how these different categories apply to a particular act. Snakenberg videotaped the girls while they were disrobing in the bedroom. That was the act.

Intent is proved by showing that the actor acted willingly (volition) and that he knew or should have known the result would follow from his act. Neither deliberation nor purpose[5] nor motive nor malice[6] are necessary elements of intent.[7]

## (1)

Snakenberg assumes that the difference between an intentional tort and a negligent tort is the absence of malice. Malice, however, is an element of neither intent nor negligence. Thus, it cannot mark the dividing line between them.

The gist of negligence is failure to observe a duty of care owed to the plaintiff by law. Negligence is determined by measuring the defendant's conduct against a standard of care, not by discovering his feelings towards the plaintiff (malice) or his subjective reasons for acting (motive). Failure to exercise due care, not intent, is the critical element in negligence. If the claim rests on the defendant's failure to exercise due care, it falls outside the scope of

---

Volition is present, since he did the act of his own will. Because he thought out his course of conduct beforehand, he also acted deliberately. (Deliberation can be inferred from the fact that the equipment was set up in advance and was concealed in order to facilitate the act.) His purpose was to observe the girls as they changed swimsuits. His motive may have been to satisfy certain naughty lusts; or, as he claims, to protect his property from theft or some other reason: the complaints did not specify a motive. Since there was no allegation of malice, Snakenberg apparently harbored no ill will towards the girls.

[5] If the actor did the act because he desired the result (purpose), the act is intentional. Thus, proving that the actor's purpose was to obtain the result is an alternate way to prove intent. While proof of purpose is sufficient to prove intent, it is not necessary to prove intent. As explained above, intent may be proven without reference to the actor's purpose.

[6] Although malice is irrelevant for proving liability, evidence of malice may be considered on the issue of punitive damages.

[7] One reason intent, deliberation, purpose, and motive are often confused is that they are used synonymously in ordinary speech. This can be illustrated by considering the following sentences:

"He intentionally broke the dish."
"He deliberately broke the dish."
"He broke the dish on purpose."
"He meant to break the dish."

In common understanding, each of these sentences means the same thing: i.e., the actor's purpose was to break the dish. Judges also tend to use "intent" "deliberate," "purpose" and "motive" interchangeably to indicate purpose. Unfortunately, these usages are so entrenched in judicial writing that they are unlikely to change. The result will be to continue to confuse what is meant in law by "intent."

wrongful intrusion into private affairs, but squarely within the cause of action for negligence.

Conversely, wrongful intrusion into private affairs always involves an intentional act. It is mistaken to conclude, as Snakenberg does, that if malice is not an element of invasion of privacy, neither is intent. The tort cannot be committed by unintended conduct amounting merely to lack of due care. Intentional conduct is a necessary element of the cause of action.

### (2)

Snakenberg's second proposition involves a similar confusion between the concepts of intent, motive, and purpose. He argues that if he did not seek to invade the girls' privacy, the act of videotaping was not intentional.

This amounts to an assertion that the act was not intentional if Snakenberg's purpose and motive were innocent. As we have stated above, purpose relates to the result desired by the actor; motive is his subjective reason for desiring the result. Neither purpose nor motive must be proven to show intent. If the videotaping was an act of volition and the resulting exposure of the girls was the expected or natural consequence of that act, intent has been proved. It is irrelevant whether Snakenberg "meant naughtily" or had motives "pure as the naked heavens."[8]

### IV.

Returning to the three complaints, we see that the facts alleged state causes of action for wrongful intrusion into private affairs. In other words, the pleadings allege an intentional tort, not a negligent tort. Snakenberg's insurance policy expressly excludes coverage for damage "which is expected or intended by the insured." Applying the rule that the insurer has no duty to defend unless the allegations of the complaint bring the case within the scope of coverage of the policy, we hold the Hartford had no duty to defend Snakenberg against suits for invasion of privacy. Accordingly, we affirm the judgment of the circuit court.

---

[8] William Wordsworth, *London 1802.*

Affirmed.

SHAW and GOOLSBY, JJ., concur.

