PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN DOE 2,

  *Plaintiff-Appellant,*

v.

THE ASSOCIATED PRESS,

  *Defendant-Appellee.*

No. 02-1965

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-02-1444-2-18)

Argued: April 3, 2003

Decided: June 11, 2003

Before WILKINSON and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Shedd and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** Gregg Meyers, Charleston, South Carolina, for Appellant.
Jerry Jay Bender, BAKER, RAVENEL & BENDER, L.L.P., Colum-
bia, South Carolina, for Appellee. **ON BRIEF:** Holly L. Palmer,
BAKER, RAVENEL & BENDER, L.L.P., Columbia, South Carolina,
for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

Plaintiff John Doe 2 brought suit against the Associated Press ("the AP") seeking damages for emotional distress inflicted by the AP's public identification of him as a sexual abuse victim. The district court dismissed plaintiff's complaint on the pleadings. Because plaintiff fails to state a viable claim under South Carolina state law, we affirm.

I.

In April 1999, Edward Fischer, a former teacher at public and private schools in Charleston, South Carolina, pled guilty to state criminal charges of sexually molesting several of his former students. The plaintiff in this case was one of Fischer's victims.

Plaintiff was invited to appear at Fischer's sentencing hearing in order to testify about the impact of the molestation and about the punishment Fischer should receive. At the hearing, plaintiff alleges, the state court judge ordered the reporters present not to identify any sexual assault victims in press accounts of the sentencing.[1] The official record of the sentencing hearing does not contain plaintiff's name. The plaintiff's name had not been known or made public before the sentencing hearing. The courtroom was, however, public and open to all interested members of the community.

A reporter from the AP was in the courtroom when the judge issued the no-disclosure instruction. AP guidelines instruct reporters to state an objection, if they have one, whenever a court proposes to close any aspect of a proceeding. However, the AP reporter did not object to the judge's order or state that he intended to include plaintiff's name in the AP story. Because plaintiff heard no objection to the court's instruction, he believed that his identity would be protected.

---

[1]We note that this order appears nowhere in the excerpted transcript of Fischer's trial as reflected in the record on this appeal. We assume for the purposes of this opinion, however, that the allegations in plaintiff's complaint are true.

Plaintiff therefore delivered his victim impact statement at the proceeding, disclosing his name during the course of his testimony.

The next day, the AP published plaintiff's name, identifying him as a sexual assault victim and disseminating the report to newspapers around the country. Although many other reporters were also present at the sentencing hearing, the AP reporter was apparently the only one to include plaintiff's name in his official report. Plaintiff discovered that the AP had published his name when an acquaintance called him the next day after reading about plaintiff in the morning paper.

Plaintiff brought a suit against the AP, seeking actual and punitive damages for fraudulent misrepresentation, invasion of privacy, and reckless or intentional infliction of emotional distress. The district court rejected plaintiff's invasion of privacy and infliction of emotional distress claims on state law grounds and ruled that plaintiff's fraudulent misrepresentation claim was barred by the First Amendment. This appeal followed.

## II.

We review de novo the district court's dismissal of a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002). In so doing, we accept as true all the plaintiff's allegations and view the complaint in the light most favorable to the plaintiff. *Id.*

## III.

Plaintiff claims that the AP is liable for the tort of fraudulent misrepresentation.[2] He argues that after the trial court issued its non-disclosure order, "[f]air dealing" required the AP reporter "to indicate his position on publishing names of criminal sexual assault victims." By keeping silent, plaintiff argues, the AP reporter "implicitly agreed to

---

[2]Plaintiff has not appealed the district court's dismissal of his intentional infliction of emotional distress claim. In any event, reporting a matter that was heard in open court is not so "atrocious and utterly intolerable in a civilized community" as to "exceed[ ] all possible bounds of decency." *Johnson v. Dailey*, 457 S.E.2d 613, 615 (S.C. 1995).

comply" with the non-disclosure order, "yet had at the time . . . no intention of keeping the promise." Plaintiff contends that the reporter's failure to state his intention was therefore a fraudulent suppression of a material fact.

In South Carolina, "[n]ondisclosure becomes fraudulent only when it is the duty of the party having knowledge of the facts to uncover them to the other." *Warr v. Carolina Power & Light Co.*, 115 S.E.2d 799, 802 (S.C. 1960). Such a duty to disclose can arise in only three cases: (1) where there exists a "preexisting definite fiduciary relation between the parties"; (2) where one party either expressly or (by virtue of the specific circumstances of the case) implicitly "reposes a trust and confidence in the other with reference to the particular transaction in question"; or (3) where "the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure." *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967); *see also Kiriakides v. Atlas Food Sys. & Servs., Inc.*, 527 S.E.2d 371, 378-80 (S.C. App. 2000), *modified on other grounds*, 541 S.E.2d 257 (S.C. 2001).

Plaintiff's relationship with the AP fits into none of these categories. Fraud of the sort alleged here typically requires some course of dealing or prior relationship between two parties. But the two parties had no prior dealings with each other of any sort, fiduciary or otherwise: the AP reporter and plaintiff were, quite simply, complete strangers. Nor was there anything intrinsically fiduciary about the AP representative's role as a courtroom reporter that day. There is nothing about the act of listening to a witness in open court that could place a burden of fiduciary loyalty on a room full of listeners. Plaintiff may well have relied on his expectation that the reporters present would not ignore the judge's instruction, but the AP reporter's failure to do so did not violate any pre-existing duty to plaintiff.

IV.

Plaintiff also claims that the AP should be held liable for the tortious invasion of his privacy. The district court held that the facts as alleged in the complaint did not state a claim for invasion of privacy under South Carolina law. We agree.

The right of privacy is "the right to be let alone; the right of a person to be free from unwarranted publicity." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 130 (S.C. 1999) (quoting *Holloman v. Life Ins. Co. of Virginia*, 7 S.E.2d 169, 171 (S.C. 1940)). South Carolina defines tortious invasion of privacy as "[t]he unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Meetze v. Associated Press*, 95 S.E.2d 606, 608 (S.C. 1956). This definition gives rise to three separate but related causes of action: "(1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs." *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5 (S.C. App. 1989).

Plaintiff does not dispute the district court's conclusion that his complaint can be construed as asserting two of these causes of action: wrongful publicizing and wrongful intrusion. We address each of these issues in order.

To face liability for wrongful publicizing of private affairs, a defendant must have intentionally committed "public disclosure of private facts about the plaintiff" — facts "in which there is no legitimate public interest." *Id.* at 6. Plaintiff points to no case, however, suggesting any circumstance under which there might be a privacy interest in information disclosed in an open courtroom. Anyone was free to sit in the courtroom and listen to plaintiff's testimony: the sentencing hearing was public and open to both ordinary members of the public and representatives of the press. Neither plaintiff's complaint nor the record suggests that the trial judge closed the courtroom or restricted attendance in any way. Indeed, "our criminal law tradition *insists* on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused." *Smith v. Doe*, 123 S. Ct. 1140, 1150 (2003) (emphasis added); *see generally Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569-574 (1980) (plurality opinion of Burger, J.).

Without some indication from South Carolina courts to the contrary, we cannot understand how the voluntary disclosure of informa-

tion in an unrestricted, open courtroom setting could be anything but a matter of public interest. The nature of the information disclosed here does not change our legal analysis: "if a person, whether willingly or not, becomes an actor in an event of public or general interest, then the publication of his connection with such an occurrence is not an invasion of his right to privacy." *Doe v. Berkeley Publ'rs*, 496 S.E.2d 636, 637 (S.C. 1998) (internal punctuation omitted) (rejecting a privacy claim based on the defendant's truthful reporting that plaintiff was a victim of a sexual assault while incarcerated in the local jail). The AP is not liable for wrongful publicizing.

To be liable for wrongful intrusion into private affairs, a defendant must have engaged in conduct that resembles "watching, spying, prying, besetting, [or] overhearing." *Snakenberg*, 383 S.E.2d at 6. Moreover, this intrusion must have invaded an area "which one normally expects will be free from exposure to the defendant." *Id.* Plaintiff has not alleged that the AP engaged in any such conduct. Plaintiff knew that the courtroom was public and that everyone in the courtroom could hear his testimony.[3] Moreover, the AP reporter was where he had a perfect right to be. A viewer in plain sight on a courtroom bench who listens to the public testimony of a witness in open court can hardly be described as "spying" or "intruding" like an illicit eavesdropper. The AP is thus not liable for wrongful intrusion.

For all these reasons, plaintiff fails to state a claim for the invasion of his privacy.

V.

In summary, while "there is some justification for the complaint . . . as to the conduct of this newspaper reporter," the courts "do not sit as censors of the manners of the Press." *Meetze*, 95 S.E.2d at 610. Plaintiff may have successfully alleged poor judgment on the part of the AP, but he has not made out a case of tortious conduct under South Carolina law. Because the complaint fails as a matter of state

---

[3]Plaintiff argues that the AP reporter behaved fraudulently and thereby created the functional equivalent of an illicit "overhearing" of plaintiff's testimony. As discussed in Part III, however, we reject the plaintiff's fraudulent misrepresentation claim on the pleadings.

law, we have no need to reach the AP's constitutional defenses. *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). The district court's judgment is

AFFIRMED.